UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------×
TAYLOR GILBERT,

     *Plaintiff,*

   v.

INDEED, INC., AARON SCHWARTZ, ALEXA
WACHSTEIN, GABRIELLE VERBARO and
MICHELLE LAM,


     *Defendants.*
------------------------------------------------------------------------×

**20-CV-03826**

**COMPLAINT**

**JURY TRIAL DEMANDED**

   Plaintiff TAYLOR GILBERT, by her counsel, Young & Ma LLP and Golenbock Eiseman Assor Bell & Peskoe LLP, alleges for her Complaint against Defendants Indeed, Inc., Aaron Schwartz, Alexa Wachstein, Gabrielle Verbaro and Michelle Lam as follows:

## PRELIMINARY STATEMENT

   1.  Defendant Indeed, Inc. ("Indeed" or the "Company") purports to be the leading digital platform to connect prospective employees with employers. Its website is replete with articles, blog posts and videos advising employers and employees about proper workplace conduct and "best practices." Indeed has over one million revenue-generating employer clients, including Facebook, Uber, Apple, Microsoft, and Johnson & Johnson. However, when it comes to its own workplace, Indeed has spawned and maintained a misogynistic culture in which women are viewed and treated as sexual objects. Indeed condones and perpetuates an environment in which women who succumb to the sexual advances of their male managers and colleagues are deemed "bubbly" and rewarded, while those who rebuff or otherwise object to

sexual advances and remarks and/or do not fit Indeed's stereotype of a healthy sexual female are ostracized, marginalized and ultimately fired or forced to resign.

2.    Indeed fuels this misogynistic culture with frequent Company-sponsored drinking marathons (sometimes dubbed "training sessions" or "orientations") at which employees are encouraged to drink to excess on Indeed's tab while male employees hit on female subordinates. Senior male employees particularly target new female hires, many of whom are starting their first jobs out of college and are understandably anxious to gain acceptance and please their superiors.

3.    At one such multi-day orientation/training event in Stamford, Connecticut, Defendant Aaron Schwartz ("Schwartz"), an Indeed manager based in Austin, Texas, aggressively came on to Plaintiff Taylor Gilbert ("Ms. Gilbert" or "Plaintiff"), who at that time was a new hire at Indeed's New York City office.  Ms. Gilbert, then just 22, had moved to New York only a few weeks earlier to start her first job out of college.  Defendant Schwartz's tactics included commenting that Ms. Gilbert was a "nice Jewish girl" and lamenting that there are "no Jewish girls in Austin."

4.    After Indeed dispatched the orientation/training group consisting mostly of new college graduates and young new hires to an evening of bar hopping on Indeed's tab, Ms. Gilbert, who became noticeably intoxicated, decided to return – alone – to her hotel (where Indeed had arranged rooms for its employees).  When she arrived at the hotel, Ms. Gilbert entered a crowded elevator to go up to her floor.  When others got off at their floors, Ms. Gilbert found herself left alone in the elevator with Defendant Schwartz, an Indeed manager from Texas who was not a new hire.  Schwartz then cornered and assaulted Ms. Gilbert in the elevator, leaving her in a state of shock and fear.  When the elevator reached Ms. Gilbert's floor, she tried

to extricate herself from this nightmare situation as best she could, explicitly telling Schwartz not to follow her to her room.  However, Schwartz proceeded to stalk her and enter her hotel room.

5.     Defendant Schwartz then raped Ms. Gilbert in her hotel room while she drifted in and out of consciousness, leaving a used condom in the trash basket as his calling card.

6.     After having a rape kit performed at a hospital, seeking therapy, and suffering in silence for months because she was rightly concerned about the adverse employment consequences she would suffer from reporting the rape and becoming "defined" within the Company as the young hire who was raped during her first weeks of work and spoke out about it, Ms. Gilbert reached a breaking point several months later upon believing she saw her rapist in the New York office, at which time she summoned the courage to report the rape to her supervisor, Defendant Alexa Wachstein ("Wachstein").  Wachstein acknowledged that Schwartz's conduct was "criminal" and that she (Wachstein) had a duty to report it, but in disregard of her legal and moral obligations, Defendant Wachstein stated that she would not report it, and instead attempted to blame Ms. Gilbert for the rape.

7.     In a further affront to Ms. Gilbert, Defendant Schwartz was promoted by Indeed, oftentimes appearing in the New York office and thereby forcing her to relive the trauma of her rape over and over, while she continued to be subjected to sexual harassment by other male employees and managers.

8.     The rape, combined with Indeed's ongoing failure to do anything about it and the continued sexual harassment and discrimination to which she has been subjected, caused Ms. Gilbert to experience severe physical and emotional injuries that Ms. Gilbert, a woman in her 20s with no prior serious medical conditions, suffered while at work at Indeed.

9.     Compounding the harm to Ms. Gilbert, Indeed failed to provide her with reasonable accommodations for disabilities caused and/or exacerbated by the rape and the ongoing sexual harassment she has suffered at Indeed.  Instead, Ms. Gilbert has been, and continues to be, marginalized and retaliated against for having reported the rape and refusing to engage in sexual liaisons with male colleagues, and also for having suffered serious physical and psychological injuries and trauma resulting from or exacerbated by the rape, including being bypassed for promotions and pay raises.

10.     Among other things, while Ms. Gilbert met all of her quotas notwithstanding the trauma and adverse treatment alleged herein, her then-manager, Defendant Michelle Lam ("Lam"), whom Ms. Gilbert informed of her medical conditions, consistently passed over Ms. Gilbert for promotions for which she was qualified and denied Ms. Gilbert opportunities to take the lead role in training programs or participate in mentorship opportunities and other team lead roles that were important to the advancement of her career at Indeed.  Defendant Lam gave those opportunities to less-qualified employees whom Lam perceived as being healthy.

11.     Ms. Gilbert, a talented young woman who came to Indeed with high aspirations and all the potential, academic qualifications and talent to succeed, has been marginalized and shunned.

12.     Defendant Gabrielle Verbaro ("Verbaro"), an Indeed Human Resources manager, recently underscored and exacerbated the retaliation and hostile work environment against Ms. Gilbert by effectuating a scheme by Defendants to force Ms. Gilbert out of the Company.  For example, in March 2019, Verbaro and her Human Resources Department cohorts gave Ms. Gilbert an ultimatum:  Unless she was able to work "full time" and "with no constrictions," "then [her] position will be terminated on March 31, 2019."  When Ms. Gilbert stood her ground and

courageously continued to perform her job notwithstanding this harassment and retaliation, Defendant Verbaro intensified the threat, telling Ms. Gilbert in August 2019 that she would need to go on long-term disability, resign or be fired.

13.    Moreover, after having been contacted by Plaintiff's counsel, Indeed issued a company-wide statement tacitly acknowledging that its personnel have used sexual relations as a basis for promotions and raises by stating that it would only prohibit this conduct going forward and would "not discipline anyone for what occurred previously."  In so doing, Indeed delivered a clear message to Ms. Gilbert that her rapist would not be disciplined and that the Company would do nothing to redress the unlawful discrimination and harassment she had been forced to endure.  Indeed also did nothing to correct the fact that certain women were promoted based on sexual relations with male managers, while Ms. Gilbert was unlawfully left behind.  Instead, Ms. Gilbert was directed to resign, while Defendant Schwartz was promoted and dispatched to the next "happy hour" to prey upon the latest crop of female hires.

14.    Indeed's outrageous and reprehensible conduct in fostering and perpetuating a "frat culture," failing to protect its most vulnerable employees from, or impose any consequences on, male predators in its employ, and marginalizing women such as Ms. Gilbert who resist and denounce the sexually charged atmosphere Indeed has spawned, while protecting (and promoting) a rapist and other sexual predators, shows that Indeed has been oblivious to the #MeToo and #TimesUp movements, and that its workplace advice to other employers and employees is a façade.

15.    Plaintiff now seeks damages, costs and other relief against Defendants Indeed, Schwartz, Wachstein, Verbaro and Lam (collectively, "Defendants") for:  discrimination based on gender and disability/perceived disability; egregious acts of sexual assault and harassment;

hostile work environment; retaliation, aiding and abetting; and other adverse employment actions, all in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"); Americans with Disabilities Act ("ADA"), codified at 42 U.S.C. §§ 12101 *et seq.*; the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 *et seq.*; and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*

16.     Plaintiff also seeks damages and costs against Defendants for failing to pay her equally as to her comparative male colleagues, as well as to her comparative female co-workers who have engaged in sexual activity with male managers for promotions, as well as to co-workers who do not have disabilities or perceived disabilities, which co-workers provide similar or the same work and have similar or the same credentials as Plaintiff, and for retaliating against her for exercising her rights and objecting to sexual advances, in violation of N.Y. Labor Law § 194.

17.     Finally, Plaintiff also seeks damages, costs and other relief against her rapist, Schwartz, pursuant to § 213-c of the New York Civil Practice Law and Rules ("CPLR") and the New York City Violence Motivated by Gender Act, N.Y.C. Admin. Code § 8-901 *et seq.*

## JURISDICTION AND VENUE

18.     Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims, as Defendants have violated Plaintiff's rights under Title VII and the ADA.

19.     On or about January 24, 2020, Plaintiff filed a Complaint of Discrimination with the New York City Commission on Human Rights and cross-filed the Complaint with the United States Equal Employment Opportunity Commission ("EEOC").

20.     Plaintiff requested a "right to sue" letter from the NYC Commission on Human Rights and EEOC on or about March 5, 2020.  The NYC Commission on Human Rights issued notice of administrative closure of this file on March 6, 2020.  The EEOC issued a Right to Sue Letter on May 5, 2020 which was received by Plaintiff on the same day.

21.     Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's NYSHRL, NYCHRL, New York Labor Law and CPLR claims as they are so related to the Title VII and ADA claims and form part of the same case or controversy.

22.     Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Southern District of New York, as Plaintiff is employed by Indeed in New York City, and a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

## PARTIES

23.     Ms. Gilbert, at all times relevant hereto, was and is a resident of New York County in the State of New York.

24.     Upon information and belief, at all times relevant hereto, Defendant Indeed was and is a foreign business corporation organized under the laws of the State of Delaware, doing business in New York City with offices located at 1120 Avenue of the Americas, 9th Floor, New York, New York 10036 (formerly at 125 West 55th Street, 9th Floor, New York, New York 10019).

25.     Upon information and belief, Indeed is an operating unit of Recruit Holdings Co., Ltd., which also owns Glassdoor.com, a popular website where current and former employees submit reviews of employers.

26.     Upon information and belief, Defendant Wachstein is an individual residing in New Jersey who works in the New York City office of Indeed.  Upon information and belief, Wachstein was married after the incidents alleged in this Complaint and also goes by the name Alexa Alpert.

27.     Upon information and belief, Defendant Schwartz is an individual residing in Texas who works in the Texas and New York City offices of Indeed.

28.     Upon information and belief, Defendant Verbaro is an individual residing in New Jersey who works in the New York City office of Indeed.

29.     Upon information and belief: Defendant Lam is an individual residing in New York who worked in the New York City office of Indeed;  Lam's employment with Indeed ended in March 2019;  and Lam is currently employed at monday.com.

<u>STATEMENT OF FACTS</u>

**Ms. Gilbert Commences Employment With Indeed In New York City After College**

30.     Indeed is a search engine company for job listings, which connects prospective employees looking for jobs with employers with job openings.  It claims to be the #1 jobs site in the World.  While it provides a service for job seekers, Indeed's "clients" actually are the companies/employers that are looking for candidates.

31.     Indeed has over one million revenue-generating employer accounts, 25 million job postings, and 250 million unique visitors per month.

32.     Several employers that are known as "Top-Rated Workplaces" use Indeed's services, such as Google, Salesforce, Pfizer, Inc., American Express and BlackRock Inc.

33.     Indeed has more than 10,000 worldwide employees.  More than 1,000 of those employees are based in New York City.

34.     Ms. Gilbert is a 27-year-old woman.

35.     Ms. Gilbert commenced employment at Indeed as an Account Executive on July 13, 2015, at the age of 22.

36.     At all times during her employment with Indeed, Ms. Gilbert was based in New York City.

37.     Ms. Gilbert's employment by Indeed was her first job out of college.  She arrived at Indeed with an impressive academic background from the University of Rochester, where she graduated with a Bachelor of Arts in Digital Media Studies and a minor in Business.

38.     After commencing employment with Indeed, Ms. Gilbert quickly proved herself and was promoted to Senior Account Executive by June 2016.

39.     As a result of Defendants' unlawful conduct as alleged herein, Ms. Gilbert has not received a promotion since June 2016.

40.     In her capacity as Senior Account Executive, Ms. Gilbert works in a client-facing role selling recruitment strategies to employers/companies.

**Indeed Promotes And Encourages A Drinking And Party Culture In Which Women Are Demeaned, Sexualized And Harassed**

41.     Indeed promotes a raucous drinking and party culture amongst its account executives and managers, which became apparent to Ms. Gilbert shortly after she was hired. This "frat boy" culture includes frequent drinking, "partying" and sex amongst colleagues, managers and junior employees.

42.     For young women at Indeed such as Ms. Gilbert, sexual relationships with male colleagues are often prerequisites to being "seen," accepted and promoted within the Company. Women who "party" and have sex with their managers are deemed "bubbly" and hence worthy of promotion.

43.     Indeed has a particular "hazing" ritual for new female employees that involves heavy drinking and sex – whether invited or unwanted – between existing employees and these young college graduates who join the Company.

**Indeed Manager Schwartz Sexually Harasses And Rapes Ms. Gilbert During An Indeed-Sponsored Orientation Event**

44.     In late July 2015, less than two weeks after Ms. Gilbert started her job with Indeed, Indeed arranged for a multi-day orientation/training program in Stamford, Connecticut, for recent hires.

45.     The orientation/training program additionally included Defendant Schwartz, who was not a new hire, but was a senior employee meeting and purportedly introducing the new employees (many of whom were recent college graduates) to the Company and its "culture." New hires and employees from Indeed's New York, Austin, Texas, and Toronto, Canada offices gathered in Stamford.

46.     During this Indeed-sponsored trip, Schwartz persistently and aggressively came on to Ms. Gilbert and made sexual advances toward her.  His unwarranted advances included stating, "***There are no Jewish girls in Austin***," and "***You're such a nice Jewish girl.***"

47.     Due to the drinking culture and pressure at Indeed and her desire to "fit in" with her new colleagues, Ms. Gilbert accompanied them to bars after a full day of training sessions and consumed alcohol socially, as all new hires were expected to do.  The orientation included numerous drinking stops that Ms. Gilbert felt compelled to attend due to the party culture that Indeed encouraged and promoted.  The drinking stops were attended by some employees in positions senior to Ms. Gilbert and were paid for by Indeed.

48.     Because of the numerous drinking stops that Ms. Gilbert felt compelled to attend, she was visibly intoxicated by the end of the evening and decided to return, alone, to her hotel room at the Stamford Sheraton (which room was booked and paid for by Indeed).

49.     At the hotel, Ms. Gilbert entered a crowded elevator to return to her room.  After others got off at their floors, Ms. Gilbert realized that she was alone in the elevator with Defendant Schwartz, an Indeed manager.  Schwartz saw his opportunity and attacked – cornering Ms. Gilbert in the elevator and aggressively trying to kiss her, leaving Ms. Gilbert in a state of shock and fear.

50.     When the elevator arrived at Ms. Gilbert's floor, she tried to extricate herself from this nightmare scenario as best she could, explicitly telling Defendant Schwartz not to follow her to her room.  However, recognizing Ms. Gilbert's compromised condition, Schwartz predatorily followed Ms. Gilbert into her hotel room, where he proceeded to rape her.  Ms. Gilbert repeatedly told Schwartz, "I'm really drunk" and implored him to stop.  But Schwartz did not stop.  He continued to rape her, even after she had passed out during this encounter.

51.     Ms. Gilbert never consented to sex with Defendant Schwartz, and her level of intoxication rendered her incapable of  consenting to sex with him.

52.     Ms. Gilbert awakened to observe Defendant Schwartz withdrawing his penis from her vagina and announcing that he was leaving.

53.     Ms. Gilbert passed out again, and when she woke up several hours later, she was clothed from the waist up but missing her underwear, which was strewn on the hotel room floor. She then discovered a used condom in the trash basket, confirming that Schwartz had gone to the Indeed orientation event with an objective:  to have sex with one of the new hires.

54.     Ms. Gilbert was 22 when Defendant Schwartz raped her.

55.     Ms. Gilbert suffered through the rest of the next day's training session, sick and vomiting, taking frequent breaks to retreat to the ladies' room to throw up.

**Ms. Gilbert Reports The Rape To Her Manager And Others, But Indeed Takes No Action Against Her Rapist, And Instead Humiliates And Marginalizes Ms. Gilbert**

56.     Ms. Gilbert returned to New York City following the orientation trip on July 24, 2015.  The  next day, on July 25, 2015, she went to Mount Sinai Beth Israel Hospital and completed a rape kit.  Ms. Gilbert told her parents and others about the rape, which was also reported to the Stamford Police Department.

57.     Still in shock and trauma, and having experienced the misogynistic culture at Indeed, Ms. Gilbert was petrified of the adverse repercussions she might suffer from reporting the rape to her employer.  She had just moved to New York City, rented an apartment, and did not want to lose her job.  She courageously returned to work.

58.     However, as alleged further below, Ms. Gilbert was sexually harassed by other Indeed employees and the pervasive hostile work environment she experienced continued unabated.

59.     During the week of February 26, 2016, Ms. Gilbert suffered a panic and anxiety attack after believing she saw her rapist, Defendant Schwartz, in the New York office.

60.     Ms. Gilbert then decided to report the rape and ongoing sexual harassment to her then-supervisor, Defendant Wachstein.  Ms. Gilbert first orally reported the rape to Wachstein shortly before March 2, 2016, and did so again in writing over Indeed's intracompany electronic chat system on March 2, 2016.  Ms. Gilbert also told Wachstein how uncomfortable she felt when men at the Company continuously hit on and sexually harassed her.  Ms. Gilbert's report to her supervisor, Defendant Wachstein, was in compliance with the reporting procedures that Indeed adopted in response to the allegations in this Complaint.

61.    Defendant Wachstein explicitly acknowledged that Schwartz's conduct was criminal, that there was proof of the rape, that Schwartz may have done the same thing to other employees and that she (Wachstein) had an obligation to report this under Indeed's harassment policies.  Yet, Defendant Wachstein wrote to Ms. Gilbert via the Indeed chat system that she was not going to report it: "[B]ased on my harassment training, I actually have to say something.  im [*sic*] not going to, but I don't feel right about it."  The conversation about the attack continued with Wachstein acknowledging, "[L]ike u went to the police and took a rape kit.  [T]hat's a HUGE deal."

62.    Defendant Wachstein then engaged in a classic "blame the victim" cover-up, stating that Ms. Gilbert may somehow have invited the rape based on an unfounded rumor that Ms. Gilbert had made out with a colleague at a bar.  Ms. Gilbert told Wachstein that this "rumor" was a lie and that she had not had any relations with any Indeed employee before being raped by Defendant Schwartz, to which Defendant Wachstein responded, " . . . and obviously that wasn't your decision."

63.    In or about the spring/summer of 2016, Ms. Gilbert also reported the rape to Frank Rizzo, a more senior Indeed employee.   Indeed took no action.

**Ms. Gilbert Experiences Continuing Sexual Harassment and A Hostile Work Environment At Indeed Following The Rape**

64.    After Ms. Gilbert reported the rape to Defendant Wachstein, Indeed failed to take any meaningful action to investigate the rape or fire Defendant Schwartz.  Instead, the sexual harassment and hostile work environment at Indeed continued, as described below.

65.    Indeed continued to expose Ms. Gilbert to Defendant Schwartz's presence in the workplace, including at the New York City office where she worked.

66.     In the fall of 2015, a new male hire at Indeed sent Ms. Gilbert a Snapchat of himself in front of a mirror, wearing only a towel.  Ms. Gilbert reported this incident to Defendant Wachstein, who disregarded it.

67.     In December 2015, following an Indeed "Holiday Party 360," Indeed employee Alfonso Pistone ("Pistone") repeatedly commented on Ms. Gilbert's breasts and repeatedly tried to touch her.  Ms. Gilbert rebuffed his advances.

68.     Also in December 2015, Indeed employee Michael Grant, who was on a work trip to New York from Indeed's Toronto office, hit on her over the Indeed intracompany chat system, tried to solicit her to go out to a bar with him, and referred to her as "My kinda lady."  Ms. Gilbert immediately reported this incident to Defendant Wachstein, but Ms. Wachstein took no appropriate action, and instead flippantly responded, "u have a new admirer/was he cute?"

69.     On February 25, 2016, Pistone again hit on Ms. Gilbert at another Indeed drinking event, called "Howl @ the Moon."  In a transparent attempt to pressure Ms. Gilbert to  give him oral sex, Pistone proudly told Ms. Gilbert that a young woman who worked at Indeed at the time, referred to herein as "Employee A" (and whose aunt works in a senior management position at Indeed) had given him oral sex in a conference room.[1]  Pistone even identified the Indeed conference room where the oral sex occurred (the "Goblin" room).  The next day, Ms. Gilbert reported this encounter to two other women at the Company, but Indeed took no action.

70.     In July 2017, Indeed employee Aaron Jacobs ("Jacobs") pressured Ms. Gilbert to have sex with him.  She rejected his advances.  This was a particularly traumatic experience for Ms. Gilbert because, among other things, Jacobs shares the first name of her rapist.

---

[1] The names of individuals referred to herein as "Employee _" have been provided to Defendants, and can be provided to the Court immediately upon request.

71.     In the fall of 2017, at an Indeed-sponsored "Happy Hour," a male Indeed Senior Account Executive told Ms. Gilbert that she was his "type" and he would date her if he did not have a girlfriend.

72.     Further demonstrating the hostile work environment to which Ms. Gilbert was subjected and the sexually-charged culture at Indeed, on December 14, 2018, at the Indeed-sponsored holiday party at Cipriani, the wife of an Indeed employee told Ms. Gilbert that another male Indeed employee at the party had groped her breasts.  Hearing of this assault of another woman at an Indeed-sponsored event by a male Indeed employee caused Ms. Gilbert to become hysterical, triggering memories of the rape by Defendant Schwartz and of the comments by Defendant Wachstein condoning such behavior and trying to justify it as the "environment" at Indeed.

73.     Ms. Gilbert has endured other painful experiences of ongoing sexual harassment and pervasive hostile work environment at Indeed.

74.     In October 2019, Indeed again dispatched Ms. Gilbert's rapist, Defendant Schwartz, to the New York office where Ms. Gilbert was working.  Prior to coming to New York, Schwartz sent Ms. Gilbert a LinkedIn invitation, triggering in Ms. Gilbert an imminent fear that Schwartz was targeting her again and causing her yet again to relive the trauma from the rape.  As a result of seeing her rapist in her workplace and the sexual harassment and hostile work environment she was forced to endure, as alleged herein, Ms. Gilbert had to go to the emergency room the next day.

**Ms. Gilbert Experiences Physical And Psychological Injuries as a Result of Her Rape, The Fact That Indeed Took No Action Against Her Rapist, And The Continued Sexual Harassment and Hostile Work Environment At Indeed**

75.     As a result of being raped by Defendant Schwartz, the fact that Indeed took no action against him, allowed him to return to her work environment and promoted him, and the

ongoing sexual harassment and hostile work environment countenanced by and openly encouraged at Indeed, Ms. Gilbert has suffered from depression, PTSD and other physical and psychological illnesses.

76.     After being raped, Ms. Gilbert began experiencing pervasive and severe migraines.

77.     Among other things, on February 7, 2017, Ms. Gilbert was admitted to the hospital for stroke-like symptoms that occurred in the office as a result of the physical and psychological trauma from her rape and the ongoing sexual harassment and hostile work environment to which she was subjected at Indeed.

78.     On February 8, 2017, Ms. Gilbert was diagnosed by her neurologist as having new daily persistent headaches/chronic migraines.

79.     In March 2017, Ms. Gilbert was hospitalized for C. difficile and also tested positive for lupus and antiphospholipid syndrome.

80.     Indeed was well aware of Ms. Gilbert's medical conditions.  Among other things, Defendant Lam, Ms. Gilbert's manager at the time, was continuously informed of Ms. Gilbert's medical conditions through conversations, emails and texts with Ms. Gilbert.  Defendant Lam had responsibility over  promotions in Ms. Gilbert's department and for determining which employees would lead training sessions, receive mentorship opportunities, and fill team lead roles that were important to career advancement at Indeed.

81.     The Indeed Human Resources Department, including Defendant Verbaro and Carly Babel ("Babel"), Senior Benefits Coordinator, as well as Ms. Gilbert's senior colleagues and co-workers, including Anthony DiGiosaffatte (Senior Director of Sales) and Richard Cerullo (Director of Sales), were also made aware of her medical conditions.

82.   Since Ms. Gilbert's first hospitalization for headaches in February 2017, she has needed reasonable intermittent time off and adjustments to her work schedule and other reasonable accommodations to address her medical conditions.  However, Indeed has not only denied her reasonable accommodations and unlawfully discriminated against her, but has evaluated and treated her adversely due to her medical conditions.

83.   The deterioration in Ms. Gilbert's health (stroke-like symptoms, chronic migraine, lupus, and other unexplained physical manifestations) has been directly related to the rape and the sexual harassment and pervasive hostile work environment at Indeed.  Ms. Gilbert did not experience any signs of these ailments prior to the rape.  In college, Ms. Gilbert participated in physical exertion sports like tennis.

**Defendants Discriminate and Retaliate Against Ms. Gilbert Based On Her Gender And Refusal To Participate In Sexual Relationships With Her Male Colleagues And Based On Her Medical Conditions**

84.   At the same time that Ms. Gilbert was being sexually harassed and subjected to a hostile work environment at Indeed, as alleged herein, Defendants unlawfully discriminated against her and further harassed and retaliated against her by, among other things, giving promotions and other favorable treatment to similarly-situated male employees, and to similarly-situated female employees who engaged in sexual and/or romantic relationships with colleagues and/or who did not suffer from Ms. Gilbert's medical conditions.  Indeed failed to promote Ms. Gilbert, and continues to fail to promote her, because she did not engage in such relationships, repeatedly objected to sexual harassment, and suffers from medical conditions.

85.   By way of example, a young, healthy female Indeed employee, referred to herein as "Employee B," dated Indeed employee Zach Carlson, and is now in a relationship with another Indeed employee, Sal Grillo (Director of Sales).  Notwithstanding that Employee B has

similar tenure and qualifications to Ms. Gilbert, Employee B has been promoted over Ms. Gilbert several times at Indeed, including to Director of Sales, as a result of her romantic relationships with these male Indeed employees and the fact that she does not have disabilities such as Ms. Gilbert's.  In fact, Employee B was promoted to Director of Sales after only three quarters in the Senior Account Executive role while, as a result of the discrimination and retaliation Ms. Gilbert has endured, Defendants have relegated Ms. Gilbert to the Senior Account Executive role for over three years.

86.     Another young, healthy female Indeed employee with similar tenure and qualifications to Ms. Gilbert, referred to herein as "Employee C," dated Indeed employee, Connor Mullen, Director of Sales.  Employee C had sex with other male Indeed employees, including managers who had decision-making responsibility for promotions.  At least some of these sex acts took place at Indeed "happy hours."  Notwithstanding that Ms. Gilbert was a Senior Account Executive for far longer than Employee C, Employee C was promoted to Director of Sales over Ms. Gilbert as a result of these sexual/romantic relationships that Employee C had with Indeed co-workers and the fact that she does not have disabilities such as Ms. Gilbert's.

87.     As a further example of the pattern of Indeed promoting women based not on tenure or performance but rather on their willingness to engage in personal relationships with male employees, on October 28, 2017, at another Indeed drinking event, Indeed Director of Sales Sam Propper had a romantic encounter with a young female Indeed employee, referred to herein as "Employee D," who was then an Indeed Account Executive, in a restroom and thereafter began a relationship with Employee D.  Employee D, who is in her 20s, was promoted over Ms. Gilbert to Agency Account Manager in January 2019 as a result of this relationship with Propper.

88.     In February 2019, Ms. Gilbert specifically reached out to an Indeed Agency Director inquiring whether there were any openings in that department (a position deemed higher than Ms. Gilbert's current role), and the Agency Director told Ms. Gilbert there were no openings.  This was false and pretextual:  Employee F (described below) and two other female co-workers who did not have perceived disabilities were then promoted into that role less than two months later.

89.     By way of further example, in January 2018, Richard Cerullo ("Cerullo"), Director of Sales at Indeed, was desperately seeking a new team lead and told Ms. Gilbert that she had the experience and qualifications to fill that role.  He told Ms. Gilbert that she was "the epitome of what I would want as a rep."  Ms. Gilbert had met all of her quotas at that time.  Cerullo asked Ms. Gilbert to speak to her manager, Defendant Lam, about obtaining the promotion.  When Ms. Gilbert informed Lam of her interest in the position, Lam, without any legitimate justification, refused to offer Ms. Gilbert as a candidate for the position.  Instead, Lam gave Ms. Gilbert an entirely false and pretextual reason for passing her over, telling Ms. Gilbert that other employees were ahead of her because they had never missed a quota.  However, Ms. Gilbert had never missed a quota at that time, and other co-workers who had missed their quotas were promoted.  Indeed and Defendant Lam unlawfully barred Ms. Gilbert from getting this deserved promotion on the basis of her disabilities and/or perceived disabilities.

90.     Because Ms. Gilbert had sought reasonable accommodations for disabilities caused or exacerbated by the rape, Defendant Lam viewed Ms. Gilbert as having no future at Indeed, and therefore also denied her the opportunity to lead training sessions and participate in mentorship opportunities and other team lead roles that were deemed important to career

advancement at Indeed.  Lam instead provided these opportunities to others who were not perceived as having disabilities.

91.    As a further example of the pattern of discrimination against female employees with disabilities and who did not succumb to the sexual advances of their male colleagues, another female Indeed employee, who is in her 30s and had been on medical leave, referred to herein as "Employee E," did not get a promotion that instead went to a less qualified female, 25-year-old employee, referred to herein as "Employee F," who did not have a perceived disability. Indeed purported to justify promoting the less experienced, healthy Employee F over the more qualified Employee E (and over Ms. Gilbert) on the basis that Employee F is regarded by Indeed as more "bubbly."  The word "bubbly" is the code word Indeed uses for women who do not have perceived disabilities and/or who acquiesce to, and do not speak out against, the sexually charged environment that Indeed promotes – *i.e.*, they fit Indeed's model of young women as sexual objects.

92.    Ms. Gilbert has an inferior title and pay to, and has been bypassed for promotions compared to, male sales employees, as well as healthy female employees and female employees who engage in sexual and/or romantic relationships with male co-workers, including, among others, Employee B, Employee C, Employee D and Employee F, despite that Ms. Gilbert has equal or superior performance and qualifications, simply because of her disability and/or refusal to engage in sexual relationships or interactions with male employees.

93.    Moreover, as a further act of discrimination and retaliation, Ms. Gilbert has received negative reviews as a consequence of her rape, her refusal to engage in romantic and/or sexual relationships or interactions with male Indeed employees, and Indeed's refusal to accommodate her disabilities, notwithstanding that Ms. Gilbert was performing well at her job

despite having been denied the accommodations to which she was legally entitled.  For example, Ms. Gilbert exceeded her quota in all four quarters of 2016 and 2017, and also achieved 102.3% of her quota in 2018.  The retaliatory negative performance reviews Ms. Gilbert has received, in turn, have been severely detrimental to Ms. Gilbert's career trajectory at Indeed.

94.     Additionally, at various times, Defendants have denied Ms. Gilbert reasonable accommodations to which she was entitled as a result of her disabilities, including, but not limited to:  breaks, reduced hours/part time work, sound proof office, dark office, office with no exposure to noise and lights, work from home, and adjustments to her sales goals.  The foregoing accommodations would have been very easy for a company the size of Indeed to provide to a sales employee such as Ms. Gilbert.

95.     Rather than provide her the reasonable accommodations necessary for her to succeed at her job, Indeed attempted to make conditions so intolerable for Ms. Gilbert that she would resign, and ultimately gave Ms. Gilbert an ultimatum to cease working at Indeed either voluntarily or involuntarily, as alleged further below.

96.     Defendants still have not adjusted Ms. Gilbert's performance goals or removed the discriminatory/retaliatory reviews from her file even after Defendants were on notice of all the facts alleged in this Complaint through counsel, and she still has not been promoted since 2016, notwithstanding that her performance and qualifications have merited promotions.

97.     Moreover, Indeed still has not taken any adverse action against Ms. Gilbert's rapist, Defendant Schwartz, or her prior supervisor, Defendant Wachstein, who told Ms. Gilbert that she (Wachstein) would not report the rape and continued sexual harassment of Ms. Gilbert notwithstanding that Wachstein had an obligation to do so.

98.    After Ms. Gilbert reported the rape to Defendant Wachstein, Indeed promoted the rapist Defendant Schwartz and marginalized Ms. Gilbert.

**In Further Acts Of Discrimination, Retaliation and Harassment Against Ms. Gilbert, Defendants Attempt To Force Ms. Gilbert Out Of The Company**

99.    In further acts of discrimination, retaliation and harassment against Ms. Gilbert, Indeed has engaged in a scheme to force her out of the Company through threats and intimidation and by discouraging her from seeking and receiving accommodations to which she is legally entitled.

100.    Among other things, in February and March 2019, Defendant Verbaro and Babel told Ms. Gilbert, without reason, that Indeed would not give her the reasonable accommodations that she required as a result of her medical conditions caused and/or exacerbated by the rape. Instead, they falsely told Ms. Gilbert, again without explanation, that she was unable to perform the essential functions of her job, which was merely a pretext to get rid of Ms. Gilbert rather than accommodate her disabilities.  Defendant Verbaro and Babel gave Ms. Gilbert an ultimatum: Unless she was able to work "full time" and "with no constrictions," "then [her] position will be terminated on March 31, 2019."

101.    Also in March 2019, in a further act of discrimination and retaliation to coerce Ms. Gilbert to leave the Company, Defendant Verbaro told Ms. Gilbert that she would not receive a bonus as a result of the time off that she had been forced to take due to her medical conditions caused and/or exacerbated by the rape.  Defendant Verbaro told Ms. Gilbert, without explanation, that Indeed would not prorate Ms. Gilbert's quota as it had done in the past.

102.    Additionally, Indeed has attempted to artificially manufacture low performance numbers for Ms. Gilbert to create a pretext to terminate her.  By way of example, when one of Ms. Gilbert's clients went out of business, Indeed inexplicably rejected Ms. Gilbert's request for

quota relief due to this event, notwithstanding that Indeed has given quota relief to other employees who did not have perceived disabilities when similar events occurred with their clients.

103.    Similarly, while Ms. Gilbert reached her quota in the third quarter of 2019 notwithstanding Defendants' unlawful efforts to keep her down, in a further act of discrimination and retaliation against Ms. Gilbert, Indeed told her that she was being placed on a "development plan" – a form of punishment for purportedly under-performing employees – even though Ms. Gilbert's manager, Chad Laskey, had assured her that she would not be placed on a development plan if she hit her quota in the third quarter, as she did.

104.    Ms. Gilbert has courageously continued to perform at Indeed notwithstanding Indeed's threats, harassment and discrimination and refusal to provide her the reasonable accommodations she requires and refusal to provide her the equal pay she deserves.  As a result, Indeed's threats and efforts to get rid of her intensified.

105.    Shortly after Ms. Gilbert took a medical leave as a result of the medical conditions caused and/or exacerbated by her rape and the other unlawful conduct discussed above, Defendant Verbaro of Human Resources approached Ms. Gilbert on August 20, 2019 and gave her an ultimatum that she: (1) go on long-term disability; (2) resign; or (3) be terminated by the end of the week.  Defendant Verbaro stated to Ms. Gilbert:  "***So, again, either way you have to move forward with the termination whether it's voluntary or involuntary.***"

106.    Defendants failed to engage in any interactive process or cooperative dialogue to accommodate Ms. Gilbert's disabilities, and instead wrongly and unilaterally concluded that she was not capable of performing the essential functions of her job.  This was merely a pretext to coerce Ms. Gilbert to leave Indeed in a further act of discrimination and retaliation, because

Defendants knew very well that Ms. Gilbert can and would perform her job functions with reasonable accommodations.

107.    Although Indeed ultimately did allow Ms. Gilbert to work from home – only after Plaintiff's counsel intervened – Ms. Gilbert continues to be harassed and treated differently from other account executives due to her gender and disability and her truthful reports of discrimination and harassment, and Defendants continue to unlawfully bypass Ms. Gilbert for promotions and keep her at a suppressed salary and bonus, and have refused to adjust her performance goals.

**Indeed Issues Deficient Policies That Acknowledge And Condone Prior Discriminatory Employment Practices**

108.    In direct response to Plaintiff's counsel advising Indeed, including its Legal Department, of the allegations that have now been set forth in this Complaint, on February 4, 2020, Indeed sent an email to its employees, including Ms. Gilbert, stating, for the first time, that the Company would be implementing policies purporting to discourage romantic relationships from impacting employment decisions such as promotions, raises and evaluations.

109.    Acknowledging that Indeed managers have in fact made employment decisions based on romantic/sexual relationships and tacitly condoning such discriminatory and unlawful conduct, Indeed stated that:  "Please note:  this change is being enacted on a go-forward basis effective March 1, 2020.  ***The purpose is not to discipline anyone for what occurred previously***."

110.    "What occurred previously," as Indeed management well knew, was rape, inappropriate fraternization, favoritism, discrimination, harassment and retaliation.

111.    Thus, exacerbating the outrageous hostile work environment for Ms. Gilbert, Indeed publicly announced that it would take no action against her rapist and would instead give

free passes to employees for the discrimination and harassment to which Ms. Gilbert has been subjected, and would do nothing to remedy such discriminatory and unlawful treatment.

## CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Gender Discrimination, Sexual Harassment and Hostile Work Environment**
**in Violation of Title VII**
**(Against Defendant Indeed)**

112.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

113.    This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000(e) *et seq.*, for relief based upon the unlawful employment practices of Defendant Indeed.

114.    Indeed was and is Plaintiff's "employer" within the meaning of Title VII.

115.    Plaintiff was and is a female "employee" of Indeed and is a member of protected classes within the meaning of Title VII.

116.    At all times, the Company was aware of Plaintiff's gender.

117.    By the conduct alleged in this Complaint, Indeed discriminated against, and continues to discriminate against, Plaintiff with respect to the compensation, terms, conditions and privileges of her employment because of her sex.

118.    Plaintiff was subjected to rape, sexual harassment and a pervasive hostile work environment by the Defendant's conduct, and Defendant's unlawful conduct in violation of Title VII is continuing.

119.    The Company engaged in, and continues to engage in, unlawful employment practices prohibited by Title VII because of Plaintiff's sex in the manner described in the Statement of Facts.

120.     Plaintiff suffered, and continues to suffer, adverse employment actions and continuing damage by the Defendant due to her sex and the sexual harassment and hostile work environment that Plaintiff suffered and continues to suffer at Indeed because of her sex.

121.     As a direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer the loss of income and damage to reputation. Plaintiff has also suffered and/or will suffer future pecuniary losses, attorney's fees and costs, emotional and physical pain and suffering, inconvenience and other non-pecuniary losses.

122.     As a further direct and proximate result of the Company's unlawful and willful conduct, Plaintiff has suffered and will continue to suffer, among other things, impairment and damage to her good name and reputation, emotional distress, physical injury, mental anguish and lasting embarrassment and humiliation.

123.     Plaintiff is entitled to recover, *inter alia*, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Indeed under Title VII.

### SECOND CAUSE OF ACTION
### Disability/Perceived Disability Discrimination in Violation of
### the Americans with Disabilities Act
### (Against Defendant Indeed)

124.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

125.     At all relevant times, Plaintiff was an "employee" of Indeed under the ADA, 42 U.S.C. § 12111(4).

126.     Defendant Indeed is an "employer" under the ADA, 42 U.S.C. § 12111(5).

26

127.    Defendant Indeed violated the ADA by discriminating against Plaintiff based on her disabilities and/or perceived disabilities in connection with employment determinations including, *inter alia*, pay, promotion, job assignments, training, leave, benefits, and other employment related activities.

128.    Plaintiff suffers from protected disabilities under the ADA, including, *inter alia*, migraines, neurological conditions, PTSD, anxiety and depression, which she made known to her employer Indeed.

129.    Plaintiff's disability was used by the Company, and continues to be used by the Company, wrongfully and without basis to deny Plaintiff the pay, privileges, and other benefits to which she was and is rightfully entitled by, *inter alia*, limiting, segregating, or classifying Plaintiff in a way that adversely affects the opportunities or status of Plaintiff because of her disability.

130.    In fact, the Company utilized Plaintiff's disability and/or perceived disability to torture her and make her uncomfortable and in ways that were detrimental to her health and safety until she was forced to work from home, further limiting her career.

131.    The Company's discrimination against Plaintiff based on her disability and/or perceived disability was intentional and willful.

132.    By reason of the foregoing, Plaintiff is entitled to recover, *inter alia*, monetary damages and other damages and relief, including, but not limited to back pay, front pay, punitive damages, reasonable attorney's fees, emotional distress damages and compensatory damages from Indeed.

## THIRD CAUSE OF ACTION
### Gender, Harassment and Disability/Perceived Disability Discrimination in Violation of New York City Human Rights Law
### (Against All Defendants)

133. Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

134. This Count is brought under the NYCHRL, N.Y.C. Admin. Code § 8-101 *et seq.*, and reference is made to the NYCHRL in its entirety.

135. At all relevant times, Defendants were and are an employer and person within the meaning of the NYCHRL.

136. At all relevant times herein, Plaintiff was and is an employee and person within the meaning of the NYCHRL.

137. Plaintiff is a female and, during her employment by Indeed following the rape by an Indeed supervisor, suffered and continues to suffer from, *inter alia*, migraines, neurological conditions, PTSD, anxiety and depression, and she is a member of protected classes within the meaning of NYCHRL.

138. At all times, Defendants were aware of Plaintiff's gender and disabilities.

139. Defendants engaged in, and continue to engage in, unlawful employment practices prohibited by NYCHRL because of Plaintiff's gender and disabilities in the manner described in the Statement of Facts.

140. Defendants engaged in, caused, perpetrated, committed, authorized, directed, participated in, aided, abetted, incited, compelled and/or coerced the unlawful conduct alleged herein, or attempted to do so, in violation of the NYCHRL.

141. Defendants' conduct, as alleged herein, was carried out with malice or reckless disregard for Plaintiff's protected rights to be free from discrimination and sexual harassment.

142.    Defendants are individually and jointly liable for the unlawful conduct herein, including without limitation as an "employer" and "employee" under the NYCHRL and under the "aiding and abetting" provision of the NYCHRL.

143.    As a direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer injury, with resulting monetary, economic and other damages, including without limitation, lost wages, lost back pay, lost benefits, lost bonuses, interest on the foregoing, and attorney's fees and costs.

144.    As a further direct and proximate result of Defendants' unlawful and willful conduct, Plaintiff has suffered and continue to suffer, among other items, impairment and damage to her good name and reputation, emotional distress, mental anguish, emotional and physical pain and suffering, and lasting embarrassment and humiliation.

145.    Plaintiff is entitled to recover monetary damages and other damages and relief, including compensatory and punitive damages, interest, and attorney's fees and costs from Defendants under the NYCHRL.

**FOURTH CAUSE OF ACTION**
**Gender, Harassment and Disability Discrimination in Violation of**
**New York State Human Rights Law**
**(Against All Defendants)**

146.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

147.    This Count is brought under the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. § 290 *et seq.*, and reference is made to the NYSHRL in its entirety.

148.    At all relevant times, the Company was and is Plaintiff's "employer" within the meaning of the NYSHRL.

149.    At all relevant times, Plaintiff was and is an "employee" of Indeed within the meaning of the NYSHRL.

150.    Plaintiff is a female and, during her employment by Indeed following the rape by an Indeed manager, suffered and continues to suffer a disability, and she is a member of protected classes within the meaning of NYSHRL.

151.    At all times, Defendants were aware of Plaintiff's gender and disability.

152.    Defendants engaged in unlawful employment practices prohibited by the NYSHRL because of Plaintiff's gender and disability in the manner described in the Statement of Facts.

153.    Plaintiff was severely limited in her career by Defendants' unlawful conduct due to her gender and disabilities.

154.    Defendants' conduct, as alleged herein, constitutes unlawful discriminatory practices and unlawful discrimination on the basis of gender and disability as defined by the NYSHRL, by engaging in, causing, perpetrating, committing, authorizing, directing, participating in, aiding, abetting, inciting, compelling and/or coercing the unlawful conduct alleged herein, or attempting to do so, in violation of the NYSHRL.

155.    Defendants are also individually and jointly liable for the unlawful conduct herein, including, without limitation, as an "employer" under the NYSHRL and under the "aiding and abetting" provision of the NYSHRL.

156.    Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

157.   Plaintiff's damages include, *inter alia*, financial loss, loss of employment opportunities, damage to her career and professional reputation, and severe emotional distress caused by the degrading conduct and loss of employment opportunities.

158.   Plaintiff is entitled to recover monetary damages and other damages and relief, including, but not limited to, back pay, front pay, compensatory and punitive damages, and costs and attorney's fees from Defendants under the NYSHRL.

**FIFTH CAUSE OF ACTION**
**Aiding and Abetting in Violation of the NYSHRL and NYCHRL**
**(Against Defendants Schwartz, Wachstein, Verbaro and Lam)**

159.   Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

160.   Defendants Schwartz, Wachstein, Verbaro and Lam (the "Individual Defendants") violated the NYSHRL and NYCHRL because they knowingly aided and abetted Indeed's unlawful discrimination, harassment and retaliation against Plaintiff as alleged in the Statement of Facts above.

161.   Defendant Schwartz knowingly and purposefully engaged in sexual harassment of Plaintiff and raped her.  Moreover, Schwartz thereafter knowingly exacerbated the hostile work environment for Plaintiff by repeatedly going to Plaintiff's place of work, which he knew would cause trauma and create a hostile work environment for Plaintiff.

162.   Defendants Wachstein, Verbaro and Lam failed to take reasonable steps to protect Plaintiff from sexual harassment and the pervasive hostile work environment at Indeed, and implemented the discriminatory and retaliatory adverse employment consequences on Plaintiff as alleged herein.  Moreover, Wachstein and Verbaro, with knowledge that Schwartz raped Plaintiff, failed, and continue to fail, to take any action to address the rape or discipline

Schwartz, or to protect Plaintiff from further encounters with her rapist.  Additionally, Defendant

Lam, who was responsible for promotions and other conditions of Plaintiff's employment,

actively participated in the discrimination and retaliation against Plaintiff by denying her

promotions and other advantages such leading training programs and participating in mentorship

opportunities and other team lead roles on the basis of Plaintiff's disabilities and requests for

reasonable accommodations.  Defendants Wachstein, Verbaro and Lam enabled and condoned,

and directly participated in, the discrimination, harassment and retaliation against Plaintiff at

Indeed.

163.    Defendants Wachstein's, Verbaro's and Lam's active participation in the

discrimination, harassment and retaliation against Plaintiff also included, among other things,

bypassing Plaintiff for promotions and raises, reducing or eliminating her bonuses, failing to

remove retaliatory negative performance reviews from her file, refusing her reasonable requests

for accommodations, spreading a false rumor that she had made out with another co-worker,

failing to take any action against her rapist and permitting her rapist to occupy the same office as

Plaintiff, notifying Plaintiff through a company-wide email that the sexual harassment and

discrimination that Plaintiff suffered would not be remedied, and giving Plaintiff an ultimatum

that she either resign or be terminated

164.    As a direct and proximate result of the Individual Defendants' conduct, Plaintiff

has suffered damage to her career path, adverse job consequences, including economic damages,

and continues to suffer damages, including severe mental, physical and emotional stress, pain

and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation

and career.

**SIXTH CAUSE OF ACTION**
**Failure to Provide a Reasonable Accommodation in Violation of**
**the ADA (Against Defendant Indeed) and the NYSHRL and NYCHRL**
**(Against Defendants Indeed, Verbaro and Lam)**

165.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

166.    The ADA, NYSHRL and NYCHRL require Defendants to engage in a mandatory interactive process and cooperative dialogue to identify a reasonable accommodation for an employee with disabilities such as Plaintiff, but Defendants failed to do so for Plaintiff.

167.    Defendants failed to provide a reasonable accommodation for Plaintiff's disabilities by refusing to engage in the mandatory interactive process and cooperative dialogue in good faith to identify a reasonable accommodation for her disabilities.

168.    As such, Defendants have violated the ADA, NYSHRL and NYCHRL.

169.    Additionally, Defendants failed to engage in a cooperative dialogue with Plaintiff after obtaining multiple verbal, written and medical notices of Plaintiff's medical need to have previous discriminatory/retaliatory reviews removed from her file and have goals adjusted and provide other reasonable accommodations as alleged in the Statement of Facts, and failed to provide a credible written explanation as to why these accommodations are not possible for a company the size of Defendants and for the experience and role Plaintiff has.

170.    As a direct and proximate consequence of Defendants' discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, economic loss and emotional distress, all in amounts to be determined at trial.

171.    Defendants' discriminatory conduct was willful and in reckless disregard of Plaintiff's protected rights.  As such, Plaintiff is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### Retaliation in Violation of
### Title VII and the ADA (Against Defendant Indeed) and the
### NYSHRL and NYCHRL
### (Against Defendants Indeed, Wachstein, Verbaro and Lam)

172.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

173.    Defendant Indeed violated Title VII and the ADA, and Defendants Indeed, Wachstein, Verbaro and Lam violated the NYSHRL and NYCHRL, because they knowingly retaliated, and continue to knowingly retaliate, against Plaintiff for objecting to having been raped by her co-worker, rebuffing and objecting to the sexual harassment at Indeed and requesting reasonable accommodations for her disabilities as alleged in the Statement of Facts above.

174.    Defendants Indeed, Wachstein, Verbaro and Lam were aware that Plaintiff engaged in the protected activities alleged above.

175.    Because of her protected activities, Defendants Indeed, Wachstein, Verbaro and Lam took retaliatory adverse employment actions against Plaintiff as alleged in the Statement of Facts above, including, but not limited to, bypassing her for promotions and raises, reducing or eliminating her bonuses, failing to remove false negative performance reviews from her file, refusing her reasonable requests for accommodations, spreading a false rumor that she had made out with another co-worker, failing to take any action against her rapist and permitting her rapist to occupy the same office as Plaintiff, notifying Plaintiff through a company-wide email that the sexual harassment and discrimination that Plaintiff suffered would not be remedied, and giving Plaintiff an ultimatum that she either resign or be terminated.

176.    The unlawful retaliation against Plaintiff by Defendants Indeed, Wachstein, Verbaro and Lam was done with malice and reckless indifference to Plaintiff's protected rights.

177.    As a direct and proximate result of the unlawful retaliation by Defendants Indeed, Wachstein, Verbaro and Lam, Plaintiff has suffered damage to her career path, adverse job consequences, including economic damages, and continues to suffer damages, including severe mental, physical and emotional stress, pain and suffering, anxiety, stress, humiliation, loss of enjoyment of life and damage to her reputation and career.

### EIGHTH CAUSE OF ACTION
### Violation of New York State Labor Law § 194
### (Against all Defendants)

178.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

179.    Plaintiff is an "employee" of Indeed as defined under N.Y. Lab. Law § 190(2).

180.    Defendants are "employers" as defined under N.Y. Lab. Law § 190(3).

181.    Defendants knowingly, willfully and intentionally paid, and continue to pay, Plaintiff less than her co-workers performing substantially similar work due to Plaintiff's sex, her objecting to rape and sexual harassment and refusal to accede to the sexual advances of her male co-workers, and having a disability/perceived disability.

182.    Defendants' disparate treatment of Plaintiff with respect to her compensation is not based on any legally-recognized differential or bona fide factor, but rather is based on Plaintiff's status in protected classes.

183.    The facts supporting unequal pay and terms and conditions of employment are further outlined in the Statement of Facts.

184.     As a result of Defendants' unlawful conduct in violation of the N.Y. Labor Law, Plaintiff is entitled under N.Y. Lab. Law § 198 to recover the full amount of the underpayment, her reasonable attorney's fees and costs, prejudgment interest and liquidated damages up to three hundred percent of the total amount of the wages due for Defendants' willful violation.

**NINTH CAUSE OF ACTION**
**Civil Action by Victim of Conduct Constituting Sexual Offense**
**Pursuant to CPLR 213-c**
**(Against Defendant Schwartz)**

185.     Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

186.     Defendant Schwartz's conduct against Plaintiff as alleged above constituted rape in the first degree as defined in N.Y. Penal Law § 130.35 because he engaged in sexual intercourse with Plaintiff by forcible compulsion and/or when Plaintiff was physically helpless.

187.     As a direct and proximate result of Defendant Schwartz's intentional rape of Plaintiff as alleged herein, Plaintiff has suffered physical, psychological and other injuries.

188.     Pursuant to CPLR 213-c, Defendant Schwartz is civilly liable to Plaintiff for damages in an amount to be determined at trial for violating the aforementioned section of the N.Y. Penal Law as alleged above.

189.     Defendant Schwartz's despicable rape of Plaintiff was intentional and committed with malice and in disregard of the rights, safety and welfare of Plaintiff, thereby justifying the award of punitive damages.

36

**TENTH CAUSE OF ACTION**
**Civil Action by Victim of Crime of Violence Motivated by Gender Pursuant to N.Y.C.**
**Admin. Code § 8-901 *et seq.***
**(Against Defendant Schwartz)**

190.    Plaintiff hereby realleges and incorporates each and every allegation contained in this Complaint with the same force as though separately alleged herein.

191.    Defendant Schwartz's conduct against Plaintiff as alleged above violated Section 8-904 of the N.Y.C. Admin. Code.

192.    As a direct and proximate result of Defendant Schwartz's intentional rape of Plaintiff as alleged herein, Plaintiff has suffered physical, psychological and other injuries.

193.    By forcibly raping Plaintiff as alleged above, Defendant Schwartz engaged in a "crime of violence" as defined in N.Y.C. Admin. Code § 8-903.

194.    Defendant Schwartz's rape of Plaintiff was "motivated by gender" as defined in N.Y.C. Admin. Code § 8-903.

195.    Pursuant to N.Y.C. Admin. Code § 8-904, Defendant Schwartz is liable to Plaintiff for compensatory damages, as well as attorney's fees and costs.

196.    Defendant Schwartz's despicable rape of Plaintiff was intentional and committed with malice and in disregard of the rights, safety and welfare of Plaintiff, thereby justifying the award of punitive damages.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests the Court grant her the following relief:

A.    Issue a declaratory judgment declaring that the actions of the Defendants, as set forth in this Complaint, violated:  (i) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; (ii) Americans with Disabilities Act, codified at 42 U.S.C. §§ 12101 *et seq.*; (iii) the New York State Human Rights Law, N.Y. Exec. Law. § 290 *et seq.*; (iv) the New

37

York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*; and (v) New York Labor Law §194; and (vi) that Defendants' foregoing acts of discrimination, harassment and retaliation against Plaintiff were intentional and willful.

B.     Issue a declaratory judgment declaring that the actions of Defendant Schwartz, as set forth in this Complaint, violated (i) § 213-c of the CPLR and (ii) the New York City Violence Motivated by Gender Act, N.Y.C. Admin. Code § 8-901 *et seq*

C.     Enjoin and restrain the Defendants and all persons acting on their behalf, or in concert with them, from engaging in such unlawful discriminatory and retaliatory practices;

D.     Enter judgment in favor of the Plaintiff, and against the Defendants, for back pay, front pay, and lost benefits, including, among other things, in the amount of the wages and bonuses it is determined that the Plaintiff lost as a result of the Defendants' unlawful, discriminatory and retaliatory conduct, together with interest (and adjusted to make Plaintiff whole for any increased tax liability incurred by her receipt of a lump sum payment in a single year);

E.     Enter judgment in favor of the Plaintiff, and against the Defendants for compensatory damages, including but not limited to, damages for Plaintiff's mental anguish, humiliation, lack of self-respect, emotional and physical pain, suffering and illness, together with interest;

F.     Award the Plaintiff punitive damages;

G.     Award the Plaintiff liquidated damages;

H.     Award the Plaintiff reasonable attorney's fees, interest, and expenses together with the costs of this action;

I.       Award such other and further legal and equitable relief as may be appropriate to redress fully the deprivation of the Plaintiff's rights under the laws cited herein, to prevent their recurrence in the future and to protect other employees from such unlawful behavior; and

J.       Such other and further relief as the court deems appropriate to be determined at trial.

Dated:       New York, New York
             May 18, 2020

                                        By: _____
                                             Tiffany Ma
                                             Young & Ma LLP
                                             575 Lexington Avenue, 4th Floor
                                             New York, NY 10022
                                             T: (212) 971-9773
                                             F: (212) 600-2301
                                             tma@youngandma.com

                                             Martin S. Hyman
                                             Matthew C. Daly
                                             Golenbock Eiseman Assor Bell &
                                               Peskoe LLP
                                             711 Third Avenue
                                             New York, NY 10017
                                             T:  (212) 907-7300
                                             mhyman@golenbock.com
                                             mdaly@golenbock.com

                                             *Attorneys for Plaintiff Taylor Gilbert*

## <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff Taylor Gilbert

demands a trial by jury on all issues properly triable by a jury.

Dated:          New York, New York
                May 18, 2020

By: _____

Tiffany Ma
Young & Ma LLP
575 Lexington Avenue, 4th Floor
New York, NY 10022
T: (212) 971-9773
F: (212) 600-2301
tma@youngandma.com

Martin S. Hyman
Matthew C. Daly
Golenbock Eiseman Assor Bell &
  Peskoe LLP
711 Third Avenue
New York, NY 10017
T:  (212) 907-7300
mhyman@golenbock.com
mdaly@golenbock.com

*Attorneys for Plaintiff Taylor Gilbert*