**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TAYLOR GILBERT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-03826 (LJL) |
| | ) | |
| INDEED, INC., AARON SCHWARTZ, | ) | |
| ALEXA WACHSTEIN, GABRIELLE | ) | |
| VERBARO, and MICHELLE LAM, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS INDEED, INC.,
ALEXA WACHSTEIN, GABRIELLE VERBARO, AND MICHELLE LAM'S
MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO COMPEL ARBITRATION, DISMISS CLAIMS AGAINST
THEM, OR IN THE ALTERNATIVE STAY THE PROCEEDINGS,
AND AWARD COSTS AND FEES**

---

Dated: July 17, 2020
    New York, NY

*Of counsel:*

Courtney S. Stieber, Esq.
Anne R. Dana, Esq.
Seyfarth Shaw LLP
620 Eighth Avenue, 32nd Fl.
New York, NY 10018
Telephone:    (212) 218-5500
Facsimile:    (212) 218-5526
Email:    cstieber@seyfarth.com
    adana@seyfarth.com

*Attorneys for Defendant Indeed, Inc.*

Aron Z. Karabel, Esq.
Waller Lansden Dortch & Davis, LLP
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone:    (615) 244-6380
Facsimile:    (615) 244-6804
Email:    aron.karabel@wallerlaw.com

*Attorneys for Defendants Indeed, Inc.,
Alexa Wachstein, Gabrielle Verbaro, and
Michelle Lam*

## <u>TABLE OF CONTENTS</u>

**Page**

I.   PRELIMINARY STATEMENT ..................................................................... 1

II.   FACTUAL BACKGROUND ...................................................................... 3

    A.   Plaintiff Agreed To Arbitrate All Employment Related Disputes ......................... 3

III.   LEGAL ARGUMENT ............................................................................ 5

    A.   The Court Should Compel Arbitration of Plaintiff's Claims and Dismiss The Claims Against the Indeed Defendants ........................................................... 6

        1.   The Parties Entered Into a Valid and Enforceable Arbitration Agreement; Therefore The Federal Arbitration Act and Supreme Court Authority Require the Court to Enforce It. ..................................... 6

        2.   The Arbitration Agreement Delegates to the Arbitrator All Questions Regarding Arbitrability. .......................................................... 10

        3.   If This Court Addresses Arbitrability, It Must Find That Plaintiff's Claims Are Arbitrable. .............................................................. 13

            i   Plaintiff's claims are within the scope of the Arbitration Agreement. ...................................................................... 14

            ii   Plaintiff's claims are arbitrable as CPLR § 7515 does not provide grounds for setting aside the Arbitration Agreement …………………….....…..15

    B.   The Court Should Award Attorney's Fees and Costs to Indeed Pursuant to the Arbitration Agreement .............................................................. 16

CONCLUSION…………………………………………………………………………......18

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arciniaga v. Gen. Motors Corp.*,
    460 F.3d 231 (2d Cir. 2006)....................................................................7

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)...........................................................................15

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986).......................................................................10, 13

*Bassett v. Elec. Arts, Inc.*,
    93 F. Supp. 3d 95 (E.D.N.Y. 2015) ..........................................................3

*Begonja v. Vornado Realty Trust*,
    159 F. Supp.3d 402 (S.D.N.Y. 2016)........................................................7

*Beture v. Samsung Elecs. Am., Inc.*,
    No. 17-5757 (SRC), 2018 WL 4621586 (D.N.J. July 18, 2018) ...........................10

*In re Capco Energy, Inc.*,
    669 F.3d 274 (5th Cir. 2012) .................................................................8

*Citigroup, Inc. v. Abu Dhabi Investment Authority*,
    776 F.3d 126 (2d Cir. 2015)...................................................................7

*Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*,
    58 F.3d 16 (2d Cir. 1995)....................................................................13

*Contec Corp. v. Remote Sol., Co.*,
    398 F.3d 205 (2d Cir. 2005)..................................................................11

*Cornelius v. Wells Fargo Bank, N.A.*,
    No. 19-CV-11043 (LJL), 2020 WL 1809324 (S.D.N.Y. Apr. 8, 2020) ....................6

*Daly v. Citigroup Inc.*,
    No. 16-cv-9183 (RJS), 2018 WL 741414 (S.D.N.Y. Feb. 6, 2018) ......................7

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985)............................................................................7

*DeClaire v. G & B McIntosh Family Ltd. P'ship*,
    260 S.W.3d 34 (Tex. App.—Houston [1st Dist.] 2008, no pet.) ............................9

64768441v.1

*In re Dillard Dept. Stores, Inc.,*
    186 S.W.3d 514 (Tex. 2006)...........................................................................9

*Epic Sys. Corp. v. Lewis,*
    138 S.Ct. 1612 (2018)...................................................................................7

*First Options of Chicago Inc. v. Kaplan,*
    514 U.S. 938 (1995)...............................................................................8, 18

*Green Tree Fin. Corp. v. Bazzle,*
    539 U.S. 444 (2003).....................................................................................10

*Harrington v. Atl. Sounding Co.,*
    602 F.3d 113 (2d Cir. 2010).........................................................................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    139 S. Ct. 524 (2019)..................................................................................11

*Hines v. Overstock.com, Inc.,*
    380 F. App'x 22 (2d Cir. 2010) ...................................................................7

*Holick v. Cellular Sales of N.Y., LLC,*
    802 F.3d 391 (2d Cir. 2015).........................................................................6

*Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.,*
    363 F.3d 137 (2d Cir. 2004).........................................................................8

*Jordan-Rowell v. Fairway Supermarket,*
    No. 18CV01938 (VEC) (DF), 2019 WL 570709 (S.D.N.Y. Jan. 16, 2019), *R.
    & R. adopted,* 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019), *appeal dismissed,*
    No. 19-2206, 2020 WL 253015 (2d Cir. Jan. 2, 2020) ...............................6

*Kai Peng v. Uber Techs., Inc.,*
    237 F. Supp. 3d 36 (E.D.N.Y. 2017) .........................................................13

*KPMG LLP v. Cocchi,*
    565 U.S. 18 (2011).........................................................................................6

*Kroupa v. Casey,*
    No. 01-0500224-CV, 2005 WL 3315279 (Tex. App. —Houston [1st Dist.]
    Dec. 8, 2005)................................................................................................10

*Lamps Plus, Inc. v. Varela,*
    139 S. Ct. 1407 (2019)................................................................................15

*Latif v. Morgan Stanley & Co. LLC,*
    No. 18CV11528 (DLC), 2019 WL 2610985 (S.D.N.Y. June 26, 2019) .............7, 15, 16

iii

*Longoria v. CKR Prop. Mgmt., LLC*,
  577 S.W.3d 263 (Tex. App. Houston [14th Dist.] Dec. 21, 2018) ........................................9

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614 (1985)..........................................................................................................6, 7

*Nat'l Prop. Holdings, L.P. v. Westergren*,
  453 S.W.3d 419 (Tex. 2015) (per curiam)..........................................................................9

*New Hampshire Ins. Co. v. Magellan Reinsurance Co.*,
  508 S.W.3d 320 (Tex. App. 2013)......................................................................................8

*In re Online Travel Co.*,
  953 F. Supp. 2d 713 (N.D. Tex. 2013) ...............................................................................8

*PaineWebber Inc. v. Bybyk*,
  81 F.3d 1193 (2d Cir. 1996)..............................................................................................12

*Palavan v. McCulley*,
  498 S.W.3d 134 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ......................................9

*Ross v. Union Carbide Corp.*,
  296 S.W.3d 206 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ............................10

*Saizhang Guan v. Uber Techs., Inc.*,
  236 F. Supp. 3d 711 (E.D.N.Y. 2017) ...............................................................................8

*Schnabel v. Trilegiant Corp.*,
  697 F.3d 110 (2d Cir. 2012)...............................................................................................8

*Southside Hosp. v. New York State Nurses Ass'n*,
  732 F. App'x 53 (2d Cir. 2018) .........................................................................................11

*In re U.S. Home Corp.*,
  236 S.W.3d 761 (Tex. 2007) (per curiam)..........................................................................10

*Vitrano v. N.A.R., Inc.*,
  No. 18-CV-06754 (KAM) (RLM), 2020 WL 1493620 (E.D.N.Y. Mar. 27,
  2020) ..................................................................................................................................13

*Wells Fargo Advisors, LLC v. Sappington*,
  884 F.3d 392 (2d Cir. 2018)...............................................................................................12

*Wendrovsky*,
  2012 WL 13042574 .............................................................................................................8

*White v. WeWork Companies, Inc.*,
  No. 20-CV-1800 (CM), 2020 WL 3099969 (S.D.N.Y. June 11, 2020) ..............................15

iv

**Statutes**

9 U.S.C. § 2 ........................................................................................................6, 15

9 U.S.C. § 4 ...............................................................................................................6

Civil Rights Act of 1964 Title VII .........................................................................14

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ..................................................... *passim*

N.Y. Labor Law § 194 ............................................................................................15

New York Civil Practice Law and Rules ("CPLR") § 7515 ......................................2

**Other Authorities**

CPLR § 7515 ..................................................................................... *passim*

CPLR § 7515(a)(2) ..................................................................................15

CPLR § 7515(b)(ii) ..................................................................................15

Federal Rules of Civil Procedure Rule 11(b) ....................................................11, 12

Federal Rules of Civil Procedure Rule 12(b)(1) .....................................................6

Federal Rules of Civil Procedure Rule 12(b)(6) .....................................................6

N.Y.C. Admin. Code § 8-901 *et seq.* ......................................................................1

Defendants Indeed, Inc. ("Indeed"), Alexa Wachstein, Gabrielle Verbaro, and Michelle Lam (collectively herein, the "Indeed Defendants")[1] submit this Memorandum of Law in support of their Motion to Compel Arbitration, Dismiss Claims Against Them, or in the Alternative Stay the Proceedings, and Award Costs and Fees" (the "Motion"), pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq*. (the "FAA"), the Federal Rules of Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6), and the parties' arbitration agreement.

## I.      PRELIMINARY STATEMENT

This lawsuit should be before an arbitrator, not this Court. Throughout her employment, Taylor Gilbert ("Plaintiff") has been subject to a valid and binding arbitration agreement in which she agreed to arbitrate any claims or disputes arising out of or relating to her employment with Indeed. Upon commencing her employment with Indeed in July 2015, Plaintiff signed an arbitration agreement, and in subsequent years she executed a separate document reaffirming her agreement to arbitrate. In the Spring of 2019, Plaintiff signed an updated arbitration agreement that remains binding today. Thus, Plaintiff is obligated to arbitrate her allegations.

Despite Plaintiff's knowledge of her obligation to arbitrate these claims, and despite Indeed providing notice of  this obligation to Plaintiff's counsel several times prior to this action, Plaintiff ignored her contractual obligations and filed the present litigation in an effort to publicize her claims.  Plaintiff's Complaint asserts various causes of action, namely: discrimination based on gender and disability; sexual harassment; hostile work environment; retaliation; aiding and abetting; and unequal pay claims.[2]  The Indeed Defendants dispute and

---

[1]      Indeed, Inc. is represented by the undersigned counsel, Seyfarth Shaw LLP and Waller Lansden Dortch & Davis, LLP.  Waller Lansden Dortch & Davis, LLP additionally represents Ms. Wachstein, Ms. Verbaro, and Ms. Lam, who join this motion.

[2]      Plaintiff's Complaint also alleges claims against a former employee of Indeed, Defendant Aaron Schwartz, pursuant to § 213-c of the CPLR and the New York City Violence Motivated by Gender Act, N.Y.C. Admin. Code § 8-901 *et seq*. The Indeed Defendants do not make any arguments or express any opinions as to these claims due to lack of knowledge and information. Specifically, Plaintiff alleges that a sexual assault underlying these two claims

1

vehemently deny Plaintiff's allegations and believe that they will ultimately prevail on the merits of these claims.  However, there can be no dispute that each of these claims fall squarely within the scope of Plaintiff's arbitration agreement. Plaintiff, although well aware of her binding arbitration agreement, has elected to disregard case law to the contrary and erroneously assert that the New York Civil Practice Law and Rules ("CPLR") § 7515 invalidates the 2019 Agreement.  Plaintiff brought this action with full awareness that the entirety of the case law interpreting CPLR § 7515 has held the opposite and enforced such arbitration agreements.

While Indeed made efforts to avoid the unnecessary cost and expenses of this motion, as well as the Court's time and judicial resources in addressing this issue, Plaintiff disregarded Indeed's multiple advance notices of the existence of the binding arbitration agreement and declined its most recent request to dismiss this Complaint without prejudice to pursue her claims in arbitration in lieu of this motion.  As such, Indeed has been unnecessarily obligated to incur attorneys' fees and costs and seeks this relief from the Court.

For these reasons and the reasons provided herein, the Indeed Defendants respectfully request that the Court grant their motion to compel arbitration and dismiss the claims against them or, in the alternative, to stay the proceedings, and additionally, award Indeed its costs and fees in connection with this motion.

---

took place in July of 2015, followed by unrelated instances of alleged harassment by individuals other than Schwartz. As a result of Plaintiff's express instruction to Ms. Wachstein *not* to disclose her allegation of assault, Indeed was otherwise unaware of such allegation until October 2019, more than four years after the alleged assault and after Plaintiff had retained her current counsel. During this four year period, beginning in February of 2017, Plaintiff's medical issues—which she did not inform Indeed were related to an alleged assault—were extensively accommodated through paid time off beyond any statutory obligation or requirement, short term disability, remote work accommodations and leave of absences. Plaintiff continues to work for the Company and has worked remotely since in or around October 2019.

2

## II.     FACTUAL BACKGROUND

### A.     Plaintiff Agreed To Arbitrate All Employment Related Disputes

On or about July 13, 2015, Plaintiff was hired to work for Indeed. (Dkt 1 at ¶ 35.) Upon commencing her employment, Plaintiff signed Indeed's "Nondisclosure, Inventions Assignment and Arbitration Agreement," which contained a clear and conspicuous arbitration provision governing any disputes with Indeed, including any claims against any Indeed employee arising out of the employment relationship (the "2015 Arbitration Agreement").[3] (Stieber Decl., Ex. A). This agreement was made in exchange for good and adequate consideration, namely Plaintiff's receipt of 1,750 Long Term Incentive Plan Units, continued employment, and a reciprocal agreement from Indeed to arbitrate its claims. *Id.*

During her employment, Plaintiff reaffirmed her agreement to arbitrate any disputes arising out of her employment with Indeed and with Indeed's employees.  In each of the years of 2016, 2017, 2018, and 2019, Plaintiff signed a "Performance Unit Agreement" under the "Indeed, Inc. Long Term Incentive Plan" (an "LTIP grant"). (Stieber Decl., Exs. B, C, D, and E). Under each LTIP grant, Plaintiff was granted a certain number of "Performance Units," wherein each unit "represents a long-term cash award opportunity." *Id*. Each LTIP grant includes, in bold print and set apart from all other language, a provision affirming agreement to abide by the terms and conditions of the arbitration agreement:

> **The grant of the [ ] Performance Units and payment of the [ ] Performance Units (whether vested or unvested) are subject to your execution and delivery to the Company of this Agreement, the execution and delivery to the Company of the NDA if you have not previously signed the NDA, and your continued compliance with the terms and conditions of the NDA.  By your signature below…you hereby agree to abide by the terms of and conditions of this Agreement, the Plan, and the NDA.**

---

[3] "A court may consider documents outside of the pleadings for the purposes of determining the arbitrability of a dispute."  *See Bassett v. Elec. Arts, Inc.*, 93 F. Supp. 3d 95, 98 n.1 (E.D.N.Y. 2015).

Stieber Decl. Ex. B, C, D; *see also* Stieber Decl. Ex. E (**"The grant of the 2019 Performance Units and payment of the 2019 Performance Units . . . are subject to your execution and delivery to the Company of this Agreement, . . . and Arbitration Agreement**.").  Thus, each year, in exchange for additional consideration, Plaintiff reaffirmed that she agreed to arbitrate all disputes she might have with Indeed or any employee of Indeed.

On May 3, 2019, Plaintiff signed an updated version of the 2015 ADR Agreement (the "Arbitration Agreement"). (Stieber Decl., Ex. E, ¶11). The Arbitration Agreement explicitly states that Plaintiff and Indeed "agree to submit ***all disputes*** . . . to final, binding arbitration to the fullest extent permitted by law." *Id*. (emphasis added). The Arbitration Agreement goes on to specifically list, as disputes covered by the agreement, each of the causes of action Plaintiff asserted in her Complaint, including claims of discrimination brought under federal, state or local law. *Id*. at ¶11(b). It also expressly states that Plaintiff and Indeed are both "precluded from bringing or raising in court . . . any dispute that . . . could have been submitted to binding arbitration under this Agreement." *Id*. In exchange for her consent to the 2019 Arbitration Agreement, Plaintiff received a mutual agreement from Indeed to arbitrate any claims the Company may likewise assert against her, 1,750 Long Term Incentive Plan Units, and continued employment.  (Stieber Decl. Ex. E, ¶11).

Upon learning in late 2019 that Plaintiff had retained counsel and intended to file a Complaint against Indeed in court, Indeed immediately objected and reminded Plaintiff of her obligation to arbitrate disputes arising out of her employment under the Arbitration Agreement. (Stieber Decl., Ex. I.)  In April 2020, Plaintiff's counsel was again provided notice of the Arbitration Agreement and indicated that she still intended to file in court. (Stieber Decl. Exs. F & G.) Given the valid and enforceable Arbitration Agreement, filing a Complaint in court would

4

be purely for its *in terrorem* value, to seek publicity, and to harass and disparage Indeed. Ignoring that all case law is to the contrary, Plaintiff asserted that CPLR § 7515 prohibits mandatory arbitration to resolve allegations or claims of discrimination.  In violation of the Arbitration Agreement, on May 18, 2020, Plaintiff filed the present action. (Dkt. 1).

Notwithstanding that Plaintiff was well aware and on notice of the Arbitration Agreement prior to filing the Complaint, by letter dated July 14, 2020, Indeed attempted again to resolve the need for this motion by reminding Plaintiff's counsel of her arbitration obligations, directing her counsel to another recent court decision reaffirming that CPLR § 7515 does not invalidate an arbitration agreement, and requesting Plaintiff withdraw her claims without prejudice to pursue them in arbitration as she is obligated to do. (Stieber Decl., Ex. H.)

Plaintiff's counsel requested that, in lieu of withdrawing her claims, the parties agree to ask the Court for a ruling on one provision of the Agreement at issue—the failure to comply provision—*before* determining whether the mandatory arbitration agreement is enforceable. However, this argument is nonsensical and designed to duplicate fees and expenses for both sides, as the Court would then be required to *twice* rule on the validity of the parties' contract, rather than address the validity of the contract in one motion.  This is particularly so where the Paragraph Plaintiff would have the Court address first, presumes the validity of the other. (Stieber Decl., Ex. J.) Because Plaintiff continues to decline to proceed in arbitration, Indeed has no remedy other than to proceed with this motion.

### III.    LEGAL ARGUMENT

Plaintiff's Arbitration Agreement is valid and must be enforced pursuant to the FAA and relevant case law. This Court should therefore enter an order compelling arbitration and

dismissing this action against the Indeed Defendants, or, in the alternative, staying the case,[4] and granting Indeed its costs and fees.

>   **A.   The Court Should Compel Arbitration of Plaintiff's Claims and Dismiss The Claims Against the Indeed Defendants**

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition [the] . . . district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. It is well settled that "[a] court ruling on a petition to compel arbitration generally must decide two issues: (1) whether the parties agreed to arbitrate, and (2) if so, whether the scope of the agreement encompasses the claims at issue." *Cornelius v. Wells Fargo Bank, N.*A., No. 19-CV-11043 (LJL), 2020 WL 1809324, at *3 (S.D.N.Y. Apr. 8, 2020) (citing *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 394 (2d Cir. 2015)).

>   **1.   The Parties Entered Into a Valid and Enforceable Arbitration Agreement; Therefore The Federal Arbitration Act and Supreme Court Authority Require the Court to Enforce It.**

The FAA provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract," 9 U.S.C. § 2. "The [FAA] reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v.*

---

[4]     "[I]t is unsettled, in th[e] [Second] Circuit, whether a motion to dismiss a complaint based on the existence of a binding arbitration agreement should be made under Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure, or under the Federal Arbitration Act ('FAA')." *Jordan-Rowell v. Fairway Supermarket*, No. 18CV01938 (VEC) (DF), 2019 WL 570709, at *7 (S.D.N.Y. Jan. 16, 2019), *R. & R. adopted*, 2019 WL 568966 (S.D.N.Y. Feb. 12, 2019), *appeal dismissed*, No. 19-2206, 2020 WL 253015 (2d Cir. Jan. 2, 2020). Courts have considered all three in reviewing motions to compel. An action should be dismissed pursuant to Rule 12(b)(1) where it is apparent that the court lacks subject matter jurisdiction to hear the case. *See* Fed. R. Civ. P. 12(b)(1). A complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Consequently, Indeed moves pursuant to both Rule 12(b)(1) and Rule 12(b)(6).

*Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). The FAA and the strong federal policy favoring arbitration require courts to "rigorously enforce agreements to arbitrate." *Mitsubishi Motors Corp.*, 473 U.S. at 625–26 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985)). In a recent term, the United States Supreme Court reinforced that principle stating: "Congress has instructed that arbitration agreements … must be enforced as written." *Epic Sys. Corp. v. Lewis*, 138 S.Ct. 1612, 1632 (2018). Both the Second Circuit and this District observed that "it is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." *Daly v. Citigroup Inc.*, No. 16-cv-9183 (RJS), 2018 WL 741414, at *6 (S.D.N.Y. Feb. 6, 2018) (quoting *Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006)).

The FAA also contains the framework that federal courts must use to decide arbitrability. As stated by the Second Circuit: "In addition to manifesting a policy strongly favoring arbitration when contracted for by parties to a dispute, the FAA establishes a body of federal substantive law of arbitrability and also supplies a procedural framework applicable in federal courts." *Citigroup, Inc. v. Abu Dhabi Investment Authority,* 776 F.3d 126, 129-30 (2d Cir. 2015) (quotations and citations omitted). This Court must follow the framework provided.

The FAA does not place a high burden upon the party moving to compel arbitration. The movant need only make a *prima facie* showing that an agreement to arbitrate exists, and then the burden shifts to the party opposing arbitration to put the making of that agreement at issue. *See Begonja v. Vornado Realty Trust*, 159 F. Supp.3d 402, 409 (S.D.N.Y. 2016) (citing *Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 24 (2d Cir. 2010)). "[A] party to an arbitration agreement seeking to avoid arbitration generally bears the burden of showing the agreement to be inapplicable or invalid." *Latif v. Morgan Stanley & Co. LLC*, No. 18CV11528 (DLC), 2019 WL

7

2610985, at *2 (S.D.N.Y. June 26, 2019) (quoting *Harrington v. Atl. Sounding Co.*, 602 F.3d

113, 124 (2d Cir. 2010)) (alteration in original).

A valid and enforceable arbitration agreement exists between Plaintiff and Indeed. The

validity of the Arbitration Agreement is governed by and construed in accordance with the laws

of the State of Texas. (Stieber Decl., Ex. E, ¶18).[5] "Under Texas law, a valid contract requires an

offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be

mutual and binding, and consideration." *In re Online Travel Co.,* 953 F. Supp. 2d 713, 718 (N.D.

Tex. 2013).[6] The parties' Arbitration Agreement satisfies these elements:

First, there can be no dispute that Plaintiff and Indeed entered into a mutually binding

agreement to, *inter alia,* arbitrate any disputes that might arise between them. The Arbitration

Agreement offered to Plaintiff states:

> The parties hereby agree to submit all disputes Employee might have against the
> Company, and all disputes the Company might have against Employee to final,
> binding arbitration to the fullest extent permitted by law. . . . . The Federal

---

[5] Although the FAA governs, state law applies to the determination of whether a valid agreement was entered into. *See First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (holding courts "should apply ordinary state-law principles that govern the formation of contracts" when determining enforceability of an arbitration agreement); *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012) ("Whether or not the parties have agreed to arbitrate is a question of state contract law."). Here, even were Plaintiff to claim that New York law should apply, the Arbitration Agreement is binding under either New York or Texas law. *See Wendrovsky*, 2012 WL 13042574, at *2 n.1 ("New York and Texas apply 'substantially similar rules for determining' whether a document is incorporated by reference into a contract," eliminating the Court's need to make a choice of law determination) (citation omitted); *New Hampshire Ins. Co. v. Magellan Reinsurance Co.*, 508 S.W.3d 320, 325 (Tex. App. 2013) (finding "no relevant distinction between Texas and New York law" in determining motion to compel); *see also Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 143 (2d Cir. 2004) ("Choice of law does not matter . . . unless the laws of the competing jurisdictions are actually in conflict," and absent such a conflict, the New York court "will dispense with choice of law analysis.").

[6] The same is true under New York law. *See Saizhang Guan v. Uber Techs., Inc.*, 236 F. Supp. 3d 711, 722 (E.D.N.Y. 2017) ("[t]o form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound" (citation omitted)); *In re Capco Energy, Inc.*, 669 F.3d 274, 279–80 (5th Cir. 2012) ("[a] binding contract requires (1) an offer; (2) an acceptance . . . ; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding" (citations omitted)).

64768441v.1

> Arbitration Act, 9 U.S.C. § 1 *et seq.*, shall govern the interpretation and enforcement of this []ADR Agreement. . . .
>
> . . . .
>
> . . . The disputes covered by this policy shall also include any claims an employee might have against any officer, director, employee or agent of the Company, . . . if that claim in any way arises out of or is ancillary to the employment relationship.

(Stieber Decl., Ex. E, ¶11).[7] The unambiguous terms of the Arbitration Agreement confirm Plaintiff's intent to arbitrate such disputes. *See  Longoria v. CKR Prop. Mgmt., LLC*, 577 S.W.3d 263, 267 (Tex. App. Houston [14th Dist.] Dec. 21, 2018) ("When an arbitration agreement is unambiguous, its construction is governed by the parties' objective intent as expressed in the agreement.") (citing *In re Dillard Dept. Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006)). Under Texas law, the determination of a meeting of the minds, and thus offer and acceptance, is based on an objective standard. *DeClaire v. G & B McIntosh Family Ltd. P'ship,* 260 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Texas courts consider only the parties' objective manifestations of assent, not their subjective states of mind, *Palavan v. McCulley*, 498 S.W.3d 134, 141 (Tex. App.—Houston [1st Dist.] 2016, no pet.) (citation omitted), and presume that, by signing the agreement, the party knows and accepts the contract terms, *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 425 (Tex. 2015) (per curiam).

Plaintiff signed the Arbitration Agreement on May 3, 2019. In exchange for that agreement to arbitrate, Plaintiff received adequate and sufficient consideration. Specifically, Plaintiff received (1) a mutually binding promise from Indeed to arbitrate all disputes the Company might have against Plaintiff, (2) 1,750 Long Term Incentive Plan units and (3)

---

[7] The Arbitration Agreement is contained in Paragraph 11 of a longer agreement titled "Confidentiality, Proprietary Rights, Restrictive Covenants, and Arbitration Agreement." (Stieber Decl., Ex. E.)

continued employment. A mutual agreement to arbitrate claims alone provides sufficient consideration to support an arbitration agreement. *In re U.S. Home Corp.,* 236 S.W.3d 761, 764 (Tex. 2007) (per curiam). The Court should favor enforcement of the parties' intentions as expressed in the contract. *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 219 (Tex. App.— Houston [14th Dist.] 2009, pet. denied); *see also Kroupa v. Casey*, No. 01-0500224-CV, 2005 WL 3315279, at *4–5 (Tex. App. —Houston [1st Dist.] Dec. 8, 2005) (enforcing arbitration clause where contract demonstrated parties' intent to arbitrate).

Because Plaintiff entered into a valid and enforceable arbitration agreement with Indeed governing the claims at issue in this action, this Court should dismiss the claims against the Indeed Defendants and compel arbitration. As set forth below, the Court need not conduct any further analysis because the subsequent issue, *i.e.* whether Plaintiff's specific claims are within the scope of the agreement and subject to arbitration, are reserved for the arbitrator pursuant to the terms of the Arbitration Agreement.

### 2. The Arbitration Agreement Delegates to the Arbitrator All Questions Regarding Arbitrability.

The United States Supreme Court held that parties may reserve the question of arbitrability for an arbitrator when the parties "clearly and unmistakably provide" that the arbitrator will decide arbitrability. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986); *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003); *see also Beture v. Samsung Elecs. Am., Inc.*, No. 17-5757 (SRC), 2018 WL 4621586, at *10 (D.N.J. July 18, 2018). The Court recently strengthened this rule, holding that, when parties delegate gateway questions to an arbitrator, a court *must* send the question of arbitrability to an arbitrator, even if a court

believes that the argument that the dispute is subject to arbitration is "wholly groundless." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019).

Two independently valid legal bases show that Plaintiff and Indeed clearly and unmistakably delegated arbitrability to the arbitrator. They did so, first, by incorporating a set of arbitration rules which confirm the arbitrator will have the sole power to rule on arbitrability. Federal courts, including the Second Circuit, routinely recognize that parties may, by incorporating a set of arbitration rules, agree that the arbitrator will have the sole power to rule on arbitrability. For example, in *Contec*, the Second Circuit held that "when . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). *See also Southside Hosp. v. New York State Nurses Ass'n,* 732 F. App'x 53, 55 (2d Cir. 2018) (citing *Contec* for same).

Indeed and Plaintiff incorporated into the Arbitration Agreement the JAMS Rules and, in the alternative, the AAA Rules:

> The arbitration proceeding, including discovery, shall be conducted in accordance with the Federal Arbitration Act and the JAMS Employment Arbitration Rules and Procedures then in effect (hereafter "JAMS Rules") or, if proceeding before AAA as provided above, AAA's Employment Arbitration Rules and Mediation Procedures then in effect (hereafter "AAA Rules").

(Stieber Decl., Ex. E, ¶11(e)(2)).

The incorporated JAMS Rules clearly state the arbitrator will decide any issues of arbitrability.  Specifically, Rule 11(b) provide that: "arbitrability disputes, including disputes over the . . .  interpretation or scope of the agreement under which Arbitration is sought . . . shall be submitted to and ruled on by the Arbitrator" and that "[u]nless the relevant law requires

11

otherwise, ***the Arbitrator has the authority to determine . . .  arbitrability issues as a preliminary matter***." JAMS Rule 11(b), *available at* https://www.jamsadr.com/rules-employment-arbitration/english (emphasis added).  The AAA Rules are similar, providing: "***[If a] party . . .  object[s] to the jurisdiction of the arbitrator or to the arbitrability of a claim . . . , [t]he arbitrator may rule on such objections as a preliminary matter or as part of the final award***." AAA Rule 6, *available at* https://www.adr.org/sites/default/files/Employment%20Rules.pdf (emphasis added). Because the Arbitration Agreement incorporates these rules, this Court should recognize the arbitrator's sole authority to decide all issues of arbitrability.

Second, by using broad language to describe the scope of claims covered, the Arbitration Agreement provides another basis for delegating arbitrability to the arbitrator. *See, e.g.*, *Wells Fargo Advisors, LLC v. Sappington,* 884 F.3d 392, 394, 396 (2d Cir. 2018) (a clause expressing agreement "to arbitrate any dispute, claim or controversy that may arise . . . concerning matters related to or arising from your employment," "demonstrate[d] the parties' clear and unmistakable intent to arbitrate all questions of arbitrability"); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir. 1996) (a contractual provision that "any and all controversies . . . shall be determined by arbitration" and that "[t]he parties are waiving their right to seek remedies in court" was found to "evidence the parties' intent to arbitrate all issues, including arbitrability").

The Arbitration Agreement that Plaintiff and Indeed signed states:

> The parties hereby agree to submit ***all disputes*** Employee might have against the Company, and ***all disputes*** the Company might have against Employee to final, binding arbitration ***to the fullest extent permitted by law***. . . .
>
> . . . .

> The disputes covered by this ADR Agreement shall include ***any claims***, including but not limited to claims known or accrued as of the date of execution of this Agreement . . . .
>
> . . . .
>
> . . . The disputes covered by this policy shall also include ***any claims*** under applicable local, state or federal law that the Company might have against the employee that arise out of or are ancillary to the employment relationship.

(Stieber Decl., Ex. E, ¶11). The phrasing used here—including "all disputes" and "any claims"—is exactly the type that courts recognize as a "broad clause." *See*, *e.g.*, *Vitrano v. N.A.R., Inc.*, No. 18-CV-06754 (KAM) (RLM), 2020 WL 1493620, *5 (E.D.N.Y. Mar. 27, 2020) ("the Second Circuit has consistently held that arbitration provisions applicable to 'any claim' or 'any dispute' should be considered 'broad'") (collecting cases); *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 19 (2d Cir. 1995) (invocation of "any dispute" in the Agreement "is the paradigm of a broad clause"); *AT&T Tech., Inc. v. Communications Workers*, 475 U.S. 643, 650 (1986) (characterizing as "broad" an arbitration clause employing the term "any"). This broad language demonstrates the clear and unmistakable intent to arbitrate all questions of arbitrability.[8]

### 3.   If This Court Addresses Arbitrability, It Must Find That Plaintiff's Claims Are Arbitrable.

While Indeed maintains that the Arbitration Agreement reserves determinations of arbitrability for the arbitrator, even if this Court determines otherwise and addresses arbitrability,

---

[8]   In contrast, the Arbitration Agreement specifically carves out that "a court of competent jurisdiction (not an arbitrator) determines the enforceability of [the class and collective action waiver] to the extent there is a challenge to its enforceability."  (Stieber Decl., Ex. E, ¶11(a)). The Arbitration Agreement's specific language distinguishing the treatment of the class and collective action waiver plainly confirms that all other issues relating to the Arbitration Agreement are to be addressed by an arbitrator. *See Kai Peng v. Uber Techs., Inc.*, 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) ("The Service Agreement's provision requiring that a court decide 'disputes relating to the interpretation or application of the Class Action Waiver or PAGA Waiver'—sometimes referred to as a 'carve-out'—does not negate a finding of clear and unmistakable delegation to the arbitrator to decide whether the parties entered a valid arbitration agreement and whether the present dispute falls within the scope of the arbitration agreement.").

64768441v.1

it must find that Plaintiff's claims are: (1) within the scope of the Arbitration Agreement; and (2) the Arbitration Agreement is not invalidated by CPLR § 7515.

### i.    Plaintiff's Claims are Within the Scope of the Arbitration Agreement.

Plaintiff's claims fall within the scope of the Arbitration Agreement. Plaintiff and Indeed agreed to submit "all disputes" and "any claims" between them to arbitration, including "any claims an employee might have against any . . . employee . . . of the Company." (Stieber Decl., Ex. E, ¶11(b)).

The Arbitration Agreement *specifically* includes *every claim that Plaintiff is alleging in this matter.*  The Arbitration Agreement includes the following provision:

> The disputes covered by this ADR Agreement shall include any claims . . . under applicable local, state or federal law that any current or former employee might have against the Company that arise out of and/or are ancillary to the employment relationship including, but not limited to, all claims relating to . . . claims of unlawful harassment and/or discrimination including, but not limited to, claims based on . . . sex, . . . disability, . . . or any other protected class (including claims under Title VII of the Civil Rights Act of 1964, . . . the Americans with Disabilities Act, . . . and any other local, state or federal law that deals with employment or employment discrimination); . . . retaliation; . . . common law and intentional torts (including, but not limited to, defamation, intentional infliction of emotional distress, assault and battery); violation of any federal, state, local or other governmental law, statute, regulation or ordinance that arises out of or is ancillary to the employment relationship; and any other common or statutory law claims that arise out of or are ancillary to the employment relationship.

(Stieber Decl., Ex. E, ¶11(b)). This provision explicitly references *each and every one* of Plaintiff's claims against the Indeed Defendants, leaving no doubt that these claims fall within the scope of the agreement. *See* Dkt. 1 (asserting claims under Title VII, ADA, NYSHRL, and NYCHRL for gender discrimination, sexual harassment, hostile work environment, disability discrimination, failure to provide reasonable accommodation, retaliation, and aiding and

abetting, as well as unequal pay claims under N.Y. Labor Law § 194). As such, Plaintiff must be compelled to arbitrate her claims against the Indeed Defendants.

> **ii.     Plaintiff's claims are arbitrable as CPLR § 7515 does not provide grounds for setting aside the Arbitration Agreement.**

State law cannot trump the FAA. Indeed anticipates that Plaintiff's counsel will argue her claims are not subject to arbitration because CPLR § 7515 carves out discrimination claims from those that can be subject to mandatory arbitration. This argument is contrary to established law. The FAA limits the basis for setting aside an agreement to arbitrate to those that "exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In the only two opinions addressing this argument, this Court has explicitly held—twice—that **CPLR § 7515 is not grounds for revoking a contract under Section 2 of the FAA and that discrimination claims are subject to mandatory arbitration if agreed to by the parties**. *See White v. WeWork Companies, Inc.*, No. 20-CV-1800 (CM), 2020 WL 3099969, at *5 (S.D.N.Y. June 11, 2020); *Latif v. Morgan Stanley & Co. LLC*, No. 18CV11528 (DLC), 2019 WL 2610985, at *2 (S.D.N.Y. June 26, 2019).

State law is preempted where it frustrates the purpose of the FAA. *Latif*, 2019 WL 2610985, at *2. (citing *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415 (2019)). "The Supreme Court has specifically forbidden state legislatures from creating exceptions to the FAA like the one embodied in CPLR § 7515: 'When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.'" *White*, 2020 WL 3099969, at *5  (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011)).

CPLR § 7515 itself expressly recognizes that it is preempted by the FAA where inconsistent with federal law. CPLR § 7515(a)(2), (b)(ii). While CPLR § 7515 may attempt to

nullify a requirement to arbitrate discrimination claims, such invalidation is inconsistent with the FAA. *Latif*, 2019 WL 2610985, at *3.

Because the FAA preempts CPLR § 7515, Plaintiff's claims are subject to mandatory arbitration and this Court should grant Indeed's motion to compel.

### B. The Court Should Award Attorney's Fees and Costs to Indeed Pursuant to the Arbitration Agreement

This motion is necessary because the Plaintiff chose to ignore her contractual obligation to arbitrate these claims. This breach warrants an award of attorneys' fees and costs to Indeed. Under the express terms of the parties' valid and binding agreement to arbitrate, Indeed is entitled to the costs, expenses, and attorneys' fees it incurs in relation to a motion to compel arbitration, and therefore this Court should enter an order awarding them.[9] The Arbitration Agreement's "Failure to Comply" provision provides the following:

> With respect to any claim required to be submitted to arbitration under this ADR Agreement, should either the Company or the employee institute any legal action . . . against the other by any method other than by arbitration, and upon notice refuse to proceed in arbitration, then the responding party shall be entitled to recover from the initiating party all costs, expenses, and attorneys' fees incurred in connection with a motion or petition to compel arbitration.

(Stieber Decl., Ex. E, ¶11(d)). The provision goes on to state that, "If as a result of [a motion to compel], a court compels arbitration," then "the court issuing the order [ ] shall have jurisdiction to award such fees and costs immediately following the issuance of that order [ ] and before the commencement or completion of the arbitration, and without regard to whether the party that successfully compels arbitration ultimately prevails on the claims to be arbitrated." *Id*.

---

[9] Upon request, at the conclusion of the motion to compel arbitration, Indeed is prepared to submit to the Court documentation of its reasonable costs, fees, and other expenses.

As set forth above, there is no dispute that Plaintiff's claims were required to be submitted to arbitration. Nor can Plaintiff dispute the fact she was given the requisite notice. Plaintiff's counsel has been on notice of the Arbitration Agreement since October 2019.  (Stieber Decl. Ex. I.)  On April 22, 2020, Plaintiff's counsel sent a letter to counsel for Indeed confirming her intent—notwithstanding her awareness of the Arbitration Agreement—to nonetheless pursue her claims in Court.  (Stieber Decl. Ex. F.) On April 26, 2020, after learning of Plaintiff's counsel's intent to file a Complaint in court, Indeed yet again provided Plaintiff's counsel notice of her obligation to arbitrate her claims, sending another copy of the Arbitration Agreement. (Stieber Decl., Ex. G.)  Plaintiff's counsel ignored such notice and filed this action. Consequently, Indeed should be awarded its fees and costs in addition to an order compelling arbitration.

In an effort to, yet again, attempt to avoid further costs to the parties and unnecessary burdens on this Court, on July 14, 2020, Indeed sent Plaintiff's counsel another letter reminding counsel of Plaintiff's arbitration obligations, directing counsel to another recent Court decision reaffirming the fact that CPLR § 7515 does not invalidate an agreement to arbitrate, and requesting Plaintiff withdraw her claims, *without* prejudice, to pursue them in arbitration or otherwise Indeed will be forced to seek its costs and fees under the terms of the Arbitration Agreement. (Stieber Decl., Ex. H.)

In response, Plaintiff's counsel requested that, in lieu of withdrawing her claims, the parties agree to ask the Court for a ruling on only one of the provisions of the Agreement at issue—the failure to comply provision—before determining whether the claims at issue must be submitted to mandatory arbitration. (Stieber Decl., Ex.  J.)  However, this argument is illogical and only serves to *duplicate* fees and expenses and the Court's resources in connection with the

17

enforcement of the Arbitration Agreement.  As drafted, in order to award fees and costs, the Court must *first* determine if a valid arbitration agreement exists, as the clause itself applies only to "any claim required to be submitted to arbitration under this ADR Agreement"  (*See* Stieber Decl., Ex. E ¶11(d) ("*If* as a result of such a motion or petition, a court compels arbitration pursuant to this ADR Agreement, *then* the party seeking that order shall be entitled to its attorney's fees and costs incurred in pursuing that order or petition…") (emphasis added)).  Thus, in a truly circular argument, Plaintiff would instead have the Court bifurcate its analysis, determining *first* whether to award fees and costs without establishing the underlying basis for such fees and costs.  The Court would then be required to *twice* rule on the validity of the parties' contract, which falls under the same analytical framework for both provisions, rather than address the contract in one motion. Plaintiff's request would serve only to delay a determination on the merits of this motion where Plaintiff was well aware of the Arbitration Agreement, including the fees and costs provision, before determining to proceed with the filing of the Complaint. (Stieber Decl. Ex. J.) Because Plaintiff continues to decline to proceed in arbitration, Indeed has no remedy other than to proceed with this motion.

As such, Indeed respectfully requests that, in addition to compelling arbitration, this Court award Indeed the costs and fees associated with this Motion.

## CONCLUSION

WHEREFORE, the Indeed Defendants respectfully request this Court enter an order compelling Plaintiff to pursue her claims in arbitration, dismissing her claims against them, or in the alternative, stay the proceedings, and awarding attorneys' fees and costs to Indeed.

Dated: New York, New York
        July 17, 2020

Respectfully submitted,
SEYFARTH SHAW LLP

By     /s/ Courtney S. Stieber
        Courtney S. Stieber
620 Eighth Avenue, 32nd Floor
New York, New York 10018-1405
cstieber@seyfarth.com
Telephone: (212) 218-5500
Facsimile: (212) 218-5526

*Attorneys for Defendant Indeed, Inc.*

WALLER LANSDEN DORTCH & DAVIS, LLP

By     /s/ Aron Z. Karabel
        Aron Z. Karabel
511 Union Street, Suite 2700
Nashville, Tennessee 37219
aron.karabel@wallerlaw.com
Telephone: (615) 244-6380
Facsimile: (615) 244-6804

*Co-counsel for Defendant Indeed, Inc.*

*Attorneys for Defendants Alexa Wachstein,
Gabrielle Verbaro and Michelle Lam*

64768441v.1